**PACIFIC TRIAL ATTORNEYS**
A Professional Corporation
Scott J. Ferrell (Bar No. 202091)
sferrell@pacifictrialattorneys.com
4100 Newport Place Drive, Suite 800
Newport Beach, California 92660
Telephone: (949) 706-6464
Facsimile:  (949) 706-6469

Attorneys for Plaintiff

# UNITED STATE DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANGELA KENNARD, individually and on behalf of all others similarly situated,<br><br>    Plaintiffs,<br><br>  v.<br><br>LAMB WESTON HOLDINGS, INC., a Delaware corporation; and DOES 1 through 10, inclusive,<br><br>    Defendants. | Case No. 4:18-cv-04665-YGR<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S RESPONSE IN OPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**<br><br>[Declaration of Scott J. Ferrell and Request for Judicial Notice filed concurrently herewith]<br><br>Date:   December 4, 2018<br>Time:   2:00 p.m.<br>Courtroom: 1<br>Judge:  Hon. Yvonne Gonzalez<br>      Rogers |

# TABLE OF CONTENTS

Page(s)

I.   STATEMENT OF THE ISSUES TO BE DECIDED ............................................. 1

II.  STATEMENT OF RELEVANT FACTS .......................................................... 1

III. ARGUMENT ................................................................................................ 2

    A.   Plaintiff's Claims Are Not Subject to Any "Safe Harbor" as
        a Matter of Law. .................................................................................. 2

    B.   The Complaint Plausibly Alleges Facts Indicating that a
        Reasonable Consumer Could Be Deceived by the Product's
        Packaging. .......................................................................................... 4

        1.   Defendant's Characterization of the "Reasonable
            Consumer" Test Is Incomplete. ............................................... 4

        2.   The Allegation that Consumers Spend an Average of
            13 Seconds to Make an In-Store Purchasing Decision
            Is Significant. ........................................................................... 6

        3.   *Hobby Indus. Ass'n of Am. v. Younger* Supports
            Plaintiff's Position. .................................................................. 6

        4.   The FDA's Final Rule Indicates that Labeling
            Statements Cannot Insulate a Manufacturer from
            Slack-Fill Liability. .................................................................. 7

        5.   The Side Panel Conflicts with Plaintiff's Claim. .................... 8

        6.   *Hawkins v. Nestle U.S.A. Inc.* Is Directly on Point. .............. 9

        7.   *Izquierdo v. Mondelez Int'l, Inc.* Is Directly on Point. ......... 9

        8.   *Escobar v. Just Born, Inc.* Is Directly on Point. ................... 9

        9.   *In re McCormick & Co., Inc., Pepper Prods.* Is
            Directly on Point. ................................................................... 10

        10.  *Ebner v. Fresh, Inc.* Is Distinguishable. ............................... 11

        11.  *Bush v. Mondelez Int'l, Inc.* Is Distinguishable. ................... 14

12. *Martinez-Leander v. Wellnx Life Sciences, Inc.* Is Unpersuasive. ....................................................................... 15

13. *Gonzales v. Peter Thomas Roth Labs, LLC* Is Distinguishable. ........................................................................ 15

14. *Fermin v. Pfizer Inc.* Is Distinguishable. ............................................. 16

C. The "Unfair" Prong of the UCL Is Sufficiently Pled. .................................. 18

D. The "Unlawful" Prong of the UCL Is Sufficiently Pled. .............................. 18

E. The Ninth Circuit Allows Doe Defendants. ................................................. 18

G. Plaintiff Did Not Purchase the Product to "Manufacture" This Lawsuit. ............................................................................................. 19

IV. CONCLUSION ................................................................................................... 20

# **TABLE OF AUTHORITIES**

**Page(s)**

**Federal Cases**

*Auer v. Robbins*,
  519 U.S. 452 (1997) ................................................................................ 14

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007) .................................................................................. 3

*Bratton v. Hershey Co.*,
  No. 2:16-cv-4322-C-NKL, 2017 WL 2126864 (W.D. Mo. May 16,
  2017) .................................................................................................... 2, 6

*Bruno v. Quten Research Inst., LLC*,
  280 F.R.D. 524 (C.D. Cal. 2011) ............................................................ 20

*Bush v. Mondelez Int'l, Inc.*,
  No. 16-cv-02460-RS, 2016 WL 5886886 (N.D. Cal. Oct. 7, 2016) ................ 14, 15

*Bush v. Mondelez Int'l, Inc.*,
  No. 16-cv-02460-RS, 2016 WL 7324990 (N.D. Cal. Dec. 16, 2016) ...................... 14

*Doe v. United States*,
  58 F.3d 494 (9th Cir. 1995) ..................................................................... 19

*Ebner v. Fresh, Inc.*,
  838 F.3d 958 (9th Cir. 2016) ............................................................ *passim*

*Escobar v. Just Born, Inc.*,
  No. 2:17-cv-01826-BRO (PJW), 2017 WL 5125740 (C.D. Cal. June 12,
  2017) (O'Connell, J.) ....................................................................... *passim*

*Fermin v. Pfizer Inc.*,
  215 F. Supp. 3d 209 (S.D.N.Y. 2016) ................................................. 16, 17

*Fortyune v. City of Lomita*,
  766 F.3d 1098 (9th Cir. 2014), *cert. denied*, 135 S. Ct. 2888 (2015) ...................... 14

*Freeman v. Time*,
  68 F.3d 285 (9th Cir. 1995) ..................................................................... 17

*Gillespie v. Civiletti*,
   629 F.2d 637 (9th Cir. 1980) ................................................................... 18

*Gonzales v. Peter Thomas Roth Labs, LLC*,
   2017 WL 5633274 (C.D. Cal. Nov. 17, 2017) ................................... 15, 16

*Hawkins v. Nestle U.S.A. Inc.*,
   309 F. Supp. 3d 696 (E.D. Mo. 2018) ........................................ 2, 6, 8, 9

*Hendricks v. StarKist Co.*,
   30 F. Supp. 3d 917 (N.D. Cal. 2014) ........................................................ 2

*In re Korea Shipping Corp., Ltd.*,
   919 F.2d 601 (9th Cir. 1990) ..................................................................... 3

*In re McCormick & Co., Inc., Pepper Prods.*,
   215 F. Supp. 3d 51 (D.D.C. 2016) .................................................... 10, 11

*Ivie v. Kraft Foods Global, Inc.*,
   No. C-12-02554-RMW, 2013 WL 685372 (N.D. Cal. Feb. 25, 2013) ...................... 2

*Izquierdo v. Mondelez Int'l, Inc.*,
   No. 16-CV-04697 (CM), 2016 WL 6459832 (S.D.N.Y. Oct. 26, 2016)............ 2, 8, 9

*Lacey v. Maricopa County*,
   693 F.3d 896 (9th Cir. 2012) ................................................................... 19

*Leonhart v. Nature's Path Foods, Inc.*,
   No. 13-cv-00492-BLF, 2014 WL 6657809 (N.D. Cal. Nov. 21, 2014) ...................... 2

*Lopez v. Smith*,
   203 F.3d 1122 (9th Cir. 2000) ................................................................. 19

*Martinez-Leander v. Wellnx Life Sciences, Inc.*,
   No. CV 16-08220 SJO (Ex), 2017 WL 2616918 (C.D. Cal. Mar. 6,
   2017) ...................................................................................................... 15

*Reid v. Johnson & Johnson*,
   780 F.3d 952 (9th Cir. 2015) ............................................................. 5, 17

*Samet v. Procter & Gamble Co.*,
   No. 5:12-CV-01891 PSG, 2013 WL 3124647 (N.D. Cal. June 18, 2013) ................. 2

*Stiles v. Trader Joe's Co.*,
   No. CV 16-04318 TJH, 2017 WL 3084267 (C.D. Cal. Apr. 4, 2017) ................. 5, 17

*The Papercraft Corp.*,
  63 F.T.C. 1965 (1963) ................................................................................................ 7

*Thomas v. Costco Wholesale Corp.*,
  No. 5:12-CV-02908-EJD, 2014 WL 1323192 (N.D. Cal. Mar. 31, 2014) ................. 2

*United States v. Fast*,
  709 F.3d 712 (8th Cir. 2013) ................................................................................. 15

*Waldman v. New Chapter, Inc.*,
  714 F. Supp. 2d 398 (E.D.N.Y. 2010) ...................................................................... 11

*Webster v. Fall*,
  266 U.S. 507 (1925) ................................................................................................ 13

*White v. Just Born, Inc.*,
  No. 2:17-cv-04025-C-NKL, 2017 WL 3130333 (W.D. Mo. July 21,
  2017) ................................................................................................................ 2, 6

*Williams v. Gerber Prods. Co.*,
  552 F.3d 934 (9th Cir. 2008) ............................................................................ *passim*

**State Cases**

*Arcala v. Golden Grain Co.*,
  No. CGC – 16-555084, slip op. (Cal. Super. Ct. Apr. 5, 2017) ........................... 2, 13

*Brady v. Bayer Corp.*,
  26 Cal. App. 5th 1156, 237 Cal. Rptr. 3d 683 (2018) ...................................... *passim*

*Chapman v. Skype Inc.*,
  220 Cal. App. 4th 217 (2013) ............................................................................ 5, 10

*Colgan v. Leatherman Tool Group, Inc.*,
  135 Cal. App. 4th 663 (2006) ...................................................................... 5, 17, 18

*Hobby Indus. Ass'n of Am. v. Younger*,
  101 Cal. App. 3d 358 (1980) ........................................................................... *passim*

*Lavie v. Proctor & Gamble Co.*,
  105 Cal. App. 4th 496 (2013) ...................................................................... 4, 5, 10, 18

*Leoni v. State Bar*,
  39 Cal. 3d 609 (1985) .............................................................................................. 5

**Federal Statutes**

15 U.S.C.
§ 1451 *et seq.* ................................................................................................. 7

**Federal Regulations**

21 C.F.R. § 100.100 ............................................................................... *passim*

21 C.F.R. § 164.120(c) ............................................................................... 3

58 Fed. Reg. 64123, 64128, 1993 WL 498605 (Dec. 6, 1993) (codified at
21 C.F.R. pt. 100) ............................................................................... 7, 13

58 Fed. Reg 64129 .................................................................................. 8

58 Fed. Reg. at 64131 ............................................................................. 8

**Federal Rules**

Fed. Rules of Civil Procedure
Rule 8(a) ............................................................................................. 3
Rule 15(a)(2) ................................................................................... 19

C.D. Cal. Local Rule 19-1 ..................................................................... 18

**State Statutes**

Business and Professions Code
§ 12601 *et seq.* .................................................................................. 6
§ 12601 ............................................................................................. 7
§ 12606 ............................................................................................. 6
§ 12606(a) ....................................................................................... 15
§ 12606(b). .............................................................................. 15, 18
§ 12606.2(c) .................................................................................... 18
§ 12606.2(c)(1) ................................................................................. 2
§ 17200 *et seq.* ....................................................................... 1, 5, 17, 18
§ 17500 *et seq.* ........................................................................... 1, 5, 17
California Fair Packaging and Labeling Act "CFPLA" ...................... 6, 7, 13
Unfair Competition Law "UCL" ................................................. 1, 5, 17, 18
False Advertising Law "FAL". .......................................................... 1, 5, 17

California's Consumer Legal Remedies Act, Cal. Civ. Code § 1750 *et seq.* ..........*passim*

**Other Authorities**

H.R. No. 2076, 89th Cong., 2d Sess. (Sept. 23, 1966) p. 7 ...............................................7

S. Rept. No. 493, 73d Cong., 2d [S]ess[.] 9 (1934) ..........................................................8

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I. STATEMENT OF THE ISSUES TO BE DECIDED

1. Should this Court decide as a matter of law whether Defendant's purported safe harbor based upon the protection of the contents of the ALEXIA-branded Sweet Potato fries with sea salt product (the "Product") applies to preclude Plaintiff's claims?

2. Does the First Amended Complaint ("FAC") plausibly allege facts indicating that a reasonable consumer could be deceived by the Product's packaging?

3. Does the FAC sufficiently plead the "unfair" prong of the UCL claim?

4. Does the FAC sufficiently plead the "unlawful" prong of the UCL claim?

5. Can fictitiously named parties (*i.e.*, the "Doe" Defendants) be included in the FAC?

## II. STATEMENT OF RELEVANT FACTS

On August 2, 2018, Plaintiff commenced the instant putative class action alleging a single claim for relief under California's Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750 *et seq.* The original Complaint alleged that Plaintiff purchased the Product, which was filled as to be misleading with over 50 percent empty space. (Dkt. 1; original Compl. ¶¶ 1, 3, 17.)

On August 31, 2018, Defendant filed a Motion to Dismiss the original Complaint. (Dkt. 8.)

On September 14, 2018, Plaintiff filed a First Amended Complaint alleging three claims for relief: (1) violation of the CLRA; (2) violation of the Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 *et seq.* (under the "unlawful," "fraudulent," "unlawful," and "unfair" prongs); and (3) violation of the False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500 *et seq.*

On September 28, 2018, Defendant filed the instant Motion seeking the dismissal with prejudice of the FAC.

/ / /

/ / /

## III.   ARGUMENT

### A.   Plaintiff's Claims Are Not Subject to Any "Safe Harbor" as a Matter of Law.

Defendant contends that Plaintiff's claims are barred by the "safe harbor" doctrine because of the protection of the contents of the package.  Cal. Bus. & Prof. Code § 12606.2(c)(1).  (Def.'s Mem. at 6:20-21.)  Defendant ignores, however, that the case authority allowing slack-fill cases to proceed past a motion to dismiss despite a defendant's assertion of one or more "safe harbors" is substantial.  *See, e.g.*, *Hawkins v. Nestle U.S.A. Inc.*, 309 F. Supp. 3d 696, 704 (E.D. Mo. 2018); *Escobar v. Just Born, Inc.*, No. 2:17-cv-01826-BRO (PJW), 2017 WL 5125740, at *12 (C.D. Cal. June 12, 2017) (O'Connell, J.); *White v. Just Born, Inc.*, No. 2:17-cv-04025-C-NKL, 2017 WL 3130333, at *4 (W.D. Mo. July 21, 2017); *Bratton v. Hershey Co.*, No. 2:16-cv-4322-C-NKL, 2017 WL 2126864, at *6 (W.D. Mo. May 16, 2017); *Izquierdo v. Mondelez Int'l, Inc.*, No. 16-CV-04697 (CM), 2016 WL 6459832, at *7 (S.D.N.Y. Oct. 26, 2016); *Samet v. Procter & Gamble Co.,* No. 5:12-CV-01891 PSG, 2013 WL 3124647, at *9 & n.95 (N.D. Cal. June 18, 2013); *Thomas v. Costco Wholesale Corp.*, No. 5:12-CV-02908-EJD, 2014 WL 1323192, at *9 (N.D. Cal. Mar. 31, 2014) (citing *Ivie v. Kraft Foods Global, Inc.*, No. C-12-02554-RMW, 2013 WL 685372, at *12 (N.D. Cal. Feb. 25, 2013)); *see also Leonhart v. Nature's Path Foods, Inc.*, No. 13-cv-00492-BLF, 2014 WL 6657809, at * 7 (N.D. Cal. Nov. 21, 2014) (denying a motion to dismiss CLRA claim based upon slack-filled packaging); *Hendricks v. StarKist Co.*, 30 F. Supp. 3d 917, 931-32 (N.D. Cal. 2014); *Arcala v. Golden Grain Co.,* No. CGC – 16-555084, slip op. at 2:14-17 (Cal. Super. Ct. Apr. 5, 2017) (overruling the defendant's demurrer in a slack-fill case after noting that much of the defendant's argument, *i.e.*, that no reasonable consumer would be deceived by the product packaging, rested on facts that were not cognizable on demurrer, given that the court was required to assume all of the allegations of the complaint were true).

1    While it may be plausible at least in theory that some limited amount of slack-fill

2    could potentially be attributable to the single safe harbor cited by Defendant, there is

3    nothing to indicate that such individual safe harbor or a combination of any others can

4    justify or explain why empty space of **over 50 percent** exists in Defendant's packaging

5    of its Product as alleged in the FAC.[1]  (*See* FAC ¶¶ 1, 3, 17.)  Notably, Defendant makes

6    no attempt at all to challenge such calculation.   Given that Defendant has surely

7    overstated the applicability of its one and only purported single safe harbor to justify the

8    sheer volume of empty space contained within its Product packaging, which this Court

9    is required to take as true, Plaintiff is entitled to conduct discovery as to Defendant's

10   purported safe harbor.[2]  Rule 8(a) of the Fed. Rules of Civil Procedure "simply calls for

11   enough fact to raise a reasonable expectation that discovery will reveal evidence" to

12   support the allegations.  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007).

13   Indeed, Defendant describes its sweet potato fries as "fragile", (Def.'s Mem. at

14   1:17), but such fries are frozen.  Indeed, the front packaging label states near the bottom

15   left hand corner, "KEEP FROZEN."  (Ferrell Decl. ¶ 2.)  Defendant is correct that the

16   image of the front packaging is "not clear," (Def.'s Mem. at 3:10), which is precisely

17   why the Court can and should consider full size image of the photograph embedded

18   within paragraph 17 of the FAC.[3]  (Ferrell Decl. ¶ 2.)  How can fries that are literally

19   frozen with ice be fragile?  As the Ninth Circuit has noted, the Titanic collided with an

20   iceberg and sank.  *In re Korea Shipping Corp., Ltd.*, 919 F.2d 601, 604 (9th Cir. 1990).

---

[1] The federal FDA has in other contexts specifically referenced a maximum of ***15 percent empty space*** in food containers.  For example, the standard of fill for shelled nuts in rigid or semirigid containers is a fill such that the average volume of nuts is not less than 85 percent of the container volume.  *See* 21 C.F.R. § 164.120(c).

[2] Defendant has made no attempt to substantiate its purported safe harbor with any evidence.  Surely, if such evidence existed, Defendant would seek to convert the instant Motion into an early summary judgment motion at least as to its purported safe harbor.

[3] Ironically, while Defendant challenges the clarity of the image of the front packaging embedded in the FAC, Defendant's own image of the front packaging curiously omits the left hand bottom corner.  Def.'s RJN Ex. 1.  Thus, it appears that Defendant's RJN is incomplete, which is precisely why the Court can and should consider the full size image of the photograph embedded within paragraph 17 of the FAC including the bottom left hand corner of the front packaging.

Although Defendant will surely challenge the iceberg analogy, what the foregoing illustrates is that the purported fragility of the Product's contents is inappropriate for a decision on a motion to dismiss as a matter of law. Plaintiff should be entitled to conduct discovery on this precise issue.

### B. The Complaint Plausibly Alleges Facts Indicating that a Reasonable Consumer Could Be Deceived by the Product's Packaging.

Defendant argues that its Product's packaging cannot plausibly confuse a reasonable consumer based on: (1) the Product's front label indicates the net weight of the Product, (Def.'s Mem. at 8:5); (2) the Product's side panel identifies the "number of servings," "approximate serving size," and the "approximate number of individual fries,"[4] *id.* at 1:6, 1:22, 8:5-6.

### 1. Defendant's Characterization of the "Reasonable Consumer" Test Is Incomplete.

A CLRA claim is governed by the "reasonable consumer" test, which requires that a plaintiff show that members of the public are likely to be deceived by the business practice at issue. *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008). "'Likely to deceive' implies more than a mere possibility that the advertisement might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner. Rather, the phrase indicates that the ad is such that it is probable that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, ***could*** be misled." *Lavie v. Proctor & Gamble Co.*, 105 Cal. App. 4th 496, 508 (2013) (emphasis added); *Ebner v. Fresh, Inc.*, 838 F.3d 958, 965 (9th Cir. 2016) (citing *Lavie*). Whether advertising is misleading "is determined by considering a reasonable consumer who is neither the most vigilant and suspicious of

---

[4] Defendant vacillates between referring to the "approximate number of individual fries," and the "number of individual fries," (Def.'s Mem. at 1:5, 1:22, 8:6), the latter of which implies that the number of individual fries is precisely disclosed in the Product's labeling. Plaintiff assumes that Defendant intended to refer to the "approximate number of individual fries instead of the precise number throughout its Memorandum.

advertising claims nor the most unwary and unsophisticated, but instead is 'the ordinary consumer within the target population.'" *Chapman v. Skype Inc.*, 220 Cal. App. 4th 217, 226 (2013) (quoting *Lavie*, 105 Cal. App. 4th at 510).

Defendant omits to mention that a "reasonable consumer" is not "the most vigilant and suspicious of advertising claims." *Chapman*, 220 Cal. App. 4th at 226. Indeed, Defendant omits to mention that in *Lavie*, *supra*, the California Court of Appeal held, "Nor need a reasonable consumer necessarily be wary or suspicious of advertising claims." 105 Cal. App. 4th at 510; *id.* at 509 ("a 'reasonable consumer' need not be 'exceptionally acute and sophisticated'"). Similarly, Defendant omits to mention, "A 'reasonable consumer' . . . 'is **not versed in the art of inspecting and judging a product, in the process of its preparation or manufacture** . . . ." *Colgan v. Leatherman Tool Group, Inc.*, 135 Cal. App. 4th 663, 682 (2006) (emphasis added and citation omitted). Indeed, just recently, the California Court of Appeal issued a published decision that reiterated that California's consumer protection statutes "prohibit 'not only advertising which is false, but also advertising which[,] although true, is either actually misleading or which has a **capacity, likelihood or tendency to deceive or confuse the public**.'" *Brady v. Bayer Corp.*, 26 Cal. App. 5th 1156, 237 Cal. Rptr. 3d 683, 697 (2018) (emphasis added) (quoting *Leoni v. State Bar*, 39 Cal. 3d 609, 626 (1985)).

Defendant has also omitted to mention that "[t]he Ninth Circuit has . . . emphasized that it is appropriate only 'in rare situations' to dismiss CLRA, FAL, and UCL claims—as a matter of law—for failure to plausibly allege that reasonable consumers would likely be deceived by food packaging." *Stiles v. Trader Joe's Co.*, No. CV 16-04318 TJH (KSx), 2017 WL 3084267, at *4 (C.D. Cal. Apr. 4, 2017) (citing *Reid v. Johnson & Johnson,* 780 F.3d 952, 958 (9th Cir. 2015) ("the reasonable consumer standard . . . . raises questions of fact that are appropriate for resolution on a motion to dismiss only in 'rare situation[s].'")) (quoting *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 939 (9th Cir. 2008)). "'Whether a practice is deceptive, fraudulent, or unfair is generally a question of fact which requires 'consideration and weighing of

evidence from both sides' and which usually cannot be made on demurrer.'" *Brady*, 237 Cal. Rptr. 3d at 689 (citations omitted). Thus, Defendant has omitted key guidance from the Ninth Circuit.

### 2. The Allegation that Consumers Spend an Average of 13 Seconds to Make an In-Store Purchasing Decision Is Significant.

Defendant curiously omits the allegation in the FAC that the average consumer spends a mere 13 seconds making an in-store purchasing decision. (FAC ¶ 1.) Defendant omits to mention that other federal district courts have expressly cited and relied upon such statistic in denying motions to dismiss involving similar slack-fill claims. *See, e.g.*, *Hawkins v. Nestle U.S.A. Inc.*, 309 F. Supp. 3d 696, 704 (E.D. Mo. 2018); *White v. Just Born, Inc.*, No. 2:17-cv-04025-C-NKL, 2017 WL 3130333, at *1, *4, *5 (W.D. Mo. July 21, 2017); *Bratton v. Hershey Co.*, No. 2:16-cv-4322-C-NKL, 2017 WL 2126864, at *1, *4, *6 (W.D. Mo. May 16, 2017).

### 3. *Hobby Indus. Ass'n of Am. v. Younger* Supports Plaintiff's Position.

Contrary to Defendant's position, labeling statements cannot insulate a defendant from slack-fill liability. Defendant omits to recognize that the decision in *Hobby Indus. Ass'n of Am. v. Younger*, 101 Cal. App. 3d 358 (1980), strongly supports Plaintiff's position. In *Younger*, the Court of Appeal, analyzing the then-applicable version of section 12606 of the Business and Professions Code, which is within the California Fair Packaging and Labeling Act ("CFPLA"), Cal. Bus. & Prof. Code § 12601 *et seq.*, held, "***Clear disclosures on labels, . . . and other informative matter*** may not counteract the impression created by the size of the package, and in this sense slack fill can be viewed as ***inherently deceptive***."[5] *Id.* at 367-68 (emphasis added). *Younger* analyzed the historical origins of the nonfunctional slackfill portion of section 12606, which

---

[5] Because the Legislature believed that the proscribed practices of unlawful packaging "are inherently deceptive," *id.* at 366, and "contributes to consumer confusion," *id.* at 367, "nonfunctional slack fill in packaging is prohibited by section 12606 without the necessity of an independent showing of fraud or deceit." *Id.* at 372.

originated from the federal Fair Packaging and Labeling Act ("FPLA"), 15 U.S.C. § 1451 *et seq.*; 101 Cal. App. 3d at 366.  The Court of Appeal cited legislative history of the federal FPLA noting that:

> "***packages have replaced the salesman***.  Therefore, it is urgently required that the information set forth on those packages be sufficiently adequate to apprise the consumer of their contents and to enable the purchaser to make ***value comparisons*** among comparable products."

101 Cal. App. 3d at 367 (quoting H.R. No. 2076, 89th Cong., 2d Sess. (Sept. 23, 1966) p. 7) (emphasis added).  *Younger* added:

> "Because the package functions as the sales clincher, the 'final silent salesman,' it was clear that a package's format and label needed to be controlled.  ***Very often package size suggests the size of the item housed therein:  a big package implies big contents*** . . . .  Hence, containers which are nonfunctionally slack filled . . . can be viewed as ***implicitly imparting inaccurate information, obfuscating the consumer's search for the true quantity or volume of the contents***, and consequently, ***impairing meaningful value comparisons***:  "'Slack filling' is an unlawful trade practice.  For a seller to package goods in containers which-unknown to the consumer-are ***appreciably oversized***, or in containers so shaped as to create the optical illusion of being larger than conventionally shaped containers of equal or greater capacity, ***is as much a deceptive practice, and an unfair method of competition, as if the seller was to make an explicit false statement of the quantity or dimension of his goods*** . . . .'"

*Younger*, 101 Cal. App. 3d at 367 (emphasis added) (quoting *The Papercraft Corp.*, 63 F.T.C. 1965, 1992 (1963)).  *Younger* recognized that both Congress and the California Legislature (via the CFPLA) intended to enact legislation "aimed at enabling the consumer to make an informed choice."  *Id.* at 367.  *Younger* also cited the Legislature's goal under the CFPLA that "[p]ackages" "should enable consumers to obtain accurate information as to the quantity of the contents and should facilitate value comparisons." *Younger*, 101 Cal. App. 3d at 365-66 (quoting Cal. Bus. & Prof. Code § 12601).

### 4. The FDA's Final Rule Indicates that Labeling Statements Cannot Insulate a Manufacturer from Slack-Fill Liability.

Whether a product is slack-filled or accurately labeled are wholly separate inquiries; a finding that a package is properly labeled has no bearing on whether or not it is also unlawfully slack-filled.  *See* Misleading Containers; Nonfunctional Slack-Fill, 58 Fed. Reg. 64123, 64128, 1993 WL 498605 (Dec. 6, 1993) (codified at 21 C.F.R. pt. 100)

(The "FDA finds that the presence of an accurate net weight statement does not eliminate the misbranding that occurs when a container is made, formed, or filled so as to be misleading."). "To rule that an accurate net weight statement protects against misleading fill would render the prohibition against misleading fill in section 403(d) of the act redundant." *Id.* at 64129. "In fact, Congress stated (S. Rept. No. 493, 73d Cong., 2d [S]ess[.] 9 (1934)) in arriving at section 403(d) of the act that that section is 'intended to reach deceptive methods of filling. . . where the package is only partly filled and, ***despite the declaration of quantity of contents on the label***, creates the impression that it contains more food than it does." *Id.* at 64129 (emphasis added), *cited in Izquierdo v. Mondelez Int'l, Inc.*, No. 16-cv-04697(CM), 2016 WL 6459832, at *6 (S.D.N.Y. Oct. 26, 2016); 58 Fed. Reg. at 64131 ("Congress stated (S. Rept. 361, supra at 9) that 'Packages only partly filled create a false impression as to the quantity of food which they contain despite the declaration of quantity of contents on the label.' "). Notably, Defendant failed to address the foregoing FDA final rule promulgating 21 C.F.R. § 100.100 nor *Izquierdo*. Defendant's silence speaks volumes.

Indeed, in *Hawkins v. Nestle U.S.A. Inc.*, 309 F. Supp. 3d 696 (E.D. Mo. 2018), the court cited the existence of federal slackfill regulation as support for the reasonableness of the consumer's belief that food packaging will not have large quantities of non-functional slackfill. *Id.* at 703.

### 5. The Side Panel Conflicts with Plaintiff's Claim.

Defendant's reliance on the side panel is misplaced because the location of those alleged qualifiers matter.[6] *Brady*, 237 Cal. Rptr. 3d at 692-93 (addressing the front-back dichotomy); *id.* at 698 (rejecting the assumption that consumers of vitamins are "back-label scrutinizers" as "untenable"). Furthermore, *Brady* held that a "back label . . . list that conflicted with, rather than confirming, a front label claim could not defeat an

---

[6] In *Williams*, the Ninth Circuit held that an ingredient list printed on the side of Gerber's "fruit juice snacks" did not cure the deception caused by pictures of various fruits on the front suggesting, falsely, that the product contained juice from those fruits. 552 F.3d at 940.

action." *Id.* at 693.  Reasoning by analogy, a side panel that *conflicts* with, rather than *confirms*, a claim based on the size of packaging, which is inherently deceptive, *Younger*, 101 Cal. App. 3d at 368 ("slack fill can be viewed as inherently deceptive"), cannot defeat a CLRA action.

### 6.   *Hawkins v. Nestle U.S.A. Inc.* Is Directly on Point.

The recent decision in *Hawkins v. Nestle U.S.A. Inc.*, 309 F. Supp. 3d 696 (E.D. Mo. 2018), is directly on point insofar as the court in that case denied a similar motion to dismiss involving allegations of slackfill food packaging and squarely held that reasonableness is an issue of fact that cannot be resolved on a motion to dismiss.  *Id.* at 702-06.  Thus, *Hawkins* supports Plaintiff's position.

### 7.   *Izquierdo v. Mondelez Int'l, Inc.* Is Directly on Point.

In *Izquierdo v. Mondelez Int'l, Inc.*, No. 16-CV-04697 (CM), 2016 WL 6459832 (S.D.N.Y. Oct. 26, 2016), which was a case involving slack-filled candy containers, the court "decline[d] to adopt [defendant's] theory that a manufacturer of a deceptively packaged product is immune from suit so long as the package accurately lists the product's net weight and quantity."  *Id.* at *7.  The court noted that the defendant had failed to cite "a single controlling decision of law standing for the proposition that food packaging is incapable of being materially misleading if it displays the net weight and lists the number of pieces inside of the package."  *Id.* at *6.  The court concluded, "This Court is unwilling to manufacture such a precedent here."  *Id.*  As mentioned above, Defendant conveniently omits addressing *Izquierdo*.

### 8.   *Escobar v. Just Born, Inc.* Is Directly on Point.

In *Escobar v. Just Born, Inc.*, No. 2:17-cv-01826-BRO (PJW), 2017 WL 5125740, at *12 (C.D. Cal. June 12, 2017) (O'Connell, J.), the district court denied the defendant's motion to dismiss asserting the argument that reasonable consumers would not ignore the accurate net weight statement on the candy package as well as their common and previous experience with packaged candy and snacks.  The court noted:

"In the Court's view, a reasonable consumer is not necessarily aware of a product's weight or volume and how that weight or volume correlates to the product's size. In other words, the fact that the Products' packaging accurately indicated that a consumer would receive 141 grams or *5 ounces* of candy does not, on its own, indicate to a reasonable consumer that the Products' box may not be full of candy and that, instead, 35.7% of the box is empty. Rather, a reasonable consumer may believe that 141 grams or *five ounces* of candy is equivalent to an amount approximately the size of the Products' box."

*Escobar*, 2017 WL 5125740, at *9 (emphasis added). The district court added, "The Court reiterates that whether advertising is misleading 'is determined by considering *a reasonable consumer who is neither the most vigilant and suspicious of advertising claims nor the most unwary and unsophisticated*, but instead is 'the ordinary consumer within the target population.'" *Escobar*, 2017 WL 5125740, at *9 n.4 (emphasis in original) (quoting *Chapman*, 220 Cal. App. 4th at 226). The court concluded:

"[H]ere, *the Court cannot find as a matter of law that a reasonable consumer of Mike & Ike® or Hot Tamales® understands that the weight displayed on the Products' packaging will measure a significantly smaller amount of Products held within a larger outer packaging*. . . . Common sense dictates . . . that consumers do not necessarily have a reasonable opportunity prior to purchase to shake or otherwise manipulate a box of candy on the shelf . . . to ascertain whether the box is filled to the brim with Product. Thus, *consumers may reasonably rely on the size of the packaging and believe that it accurately reflects the amount she is purchasing*."

*Escobar*, 2017 WL 5125740, at *10 (emphasis added).

As the district court correctly recognized in *Escobar*, the issue is whether the plaintiff has presented enough facts to suggest that the product packaging "may" mislead a reasonable consumer, as opposed to whether the plaintiff shall, with certainty, do so. *Escobar*, 2017 WL 5125740, at *8 (citing *Lavie*, 105 Cal. App. 4th at 509-10); *Escobar*, 2017 WL 5125740, at *10 n.5 ("what is relevant at this stage is not what a reasonable consumer *actually* believes, but whether Plaintiff has plausibly pleaded facts indicating what a reasonable consumer *could* believe") (emphasis in original).

### 9.    *In re McCormick & Co., Inc., Pepper Prods.* Is Directly on Point.

In *In re McCormick & Co., Inc., Pepper Prods.*, 215 F. Supp. 3d 51 (D.D.C. 2016), the district court, in analyzing nonfunctional slack-fill in McCormick's pepper tins, rejected the defendant's argument that the size of its containers did not constitute advertising as defying "common sense and the law." *Id.* at 59. The district court held

that excessive slack fill states a claim for false advertising.  *Id.* at 60 (citing *Waldman v. New Chapter, Inc.*, 714 F. Supp. 2d 398, 406 (E.D.N.Y. 2010)).  The district court noted, "The size of a package signals to the consumer vital information about a product and is as influential in affecting a customer's choices as an explicit message on its surface. Moreover, in this case, '[t]he size of McCormick's containers is exactly what makes them misleading, because consumers cannot see the amount of their contents.' "  *Id.* at 60.  The district court, citing 21 C.F.R. § 100.100, then held:

> "It is true that McCormick's containers state the actual weight of the contents on the front corner, ***but the slack-fill regulations do not include an exception for containers which accurately state the product amount***.  *See id.*  An accurate statement of weight does not necessarily correct a consumer's misimpression of product quantity based on the size of a container, because consumers are accustomed to seeing how much space a product occupies but may not know how that relates to its weight."

*In re McCormick*, 215 F. Supp. 3d at 60 (emphasis added).  Defendant conveniently omits addressing *In re McCormick*.

### 10.   *Ebner v. Fresh, Inc.* Is Distinguishable.

Although Defendant relies heavily on the Ninth Circuit's decision in *Ebner v. Fresh, Inc.*, 838 F.3d 958 (9th Cir. 2016), (Def.'s Mem. at 8:7-9), such decision is distinguishable.  In *Ebner*, the Ninth Circuit addressed claims that a lip balm product's label, tube design (allowing only 75 percent of the product to advance up the tube and being reasonably accessible to the consumer), and packaging were false or misleading. *See Ebner*, 838 F.3d at 961.  The plaintiff's label claim asserted that the defendant omitted supplemental statements about product weight and accessibility (*i.e.*, that only 75% of the product is reasonably accessible).  *Id.* at 964.  The product's tube and packaging claims alleged that the product's "vastly oversized tubes and boxes" create the misleading impression that each unit has a larger quantity of lip product than it actually contains."  *Id.* at 962.  The district court dismissed the plaintiff's claims and the Ninth Circuit affirmed.

The Ninth Circuit began its analysis by affirming the dismissal of the plaintiff's labeling claim based on the reasonable consumer test.  *Id.* at 965-66.  Although the

Ninth Circuit mentioned the disclosure of the weight on the label, the key factor was that the Ninth Circuit held that "there is no deceptive act to be dispelled." *Id.* at 966. The "weight label does not ***contradict*** other representations or inferences on [the product's] packaging." *Id.* (emphasis added).

The Ninth Circuit then addressed the plaintiff's "oversized and ***weighty*** packaging and tube design" claims under the reasonable consumer test. *Id.* at 966 (emphasis added). In affirming the dismissal of such claims, the Ninth Circuit addressed the nature of the claims as follows, "Plaintiff alleges that ***the tube's screw mechanism, the 5.35 gram metallic bottom***, and ***the oversized tube*** and cardboard packaging all contribute to the misleading impression of a larger quantity of lip product than is actually included." *Id.* at 967 (emphasis added). In other words, the plaintiff's "design and packaging" claims were not limited to the "cardboard packaging." Indeed, although the Ninth Circuit relied upon the "accurate net weight label . . . affixed to every . . . tube and its accompanying cardboard box," *id.* at 967, the Ninth Circuit also relied upon its finding that: (i) "the reasonable consumer . . . understands that ***some additional weight at the bottom of the tube***-not consisting of product-***may be required to keep the tube upright***," *id.*; (ii) the product "sells for approximately $22.50 to $25.00 a unit" in the "high-end cosmetics market," *id.*; and (iii) the product's "elaborate packaging and ***the weighty feel of the tube*** is commonplace and even expected by a significant portion of [defendant's] 'targeted consumers'" in the "high-end cosmetics market," *id.* (emphasis added). The Ninth Circuit concluded, "Because of the widespread nature of ***this practice***, no reasonable consumer expects the ***weight*** or overall size of the packaging to reflect directly the quantity of product contained therein." *Id.* (emphasis added). Significantly, however, the Ninth Circuit did not address the effect, if any, of the FDA's guidance in 21 C.F.R. § 100.100 as to the effect of an accurate net weight statement on food packaging that contains nonfunctional slackfill.

Finally, the Ninth Circuit separately addressed in section III.C of its opinion the plaintiff's nonfunctional slackfill claim ***without applying the reasonable consumer test***

*to such claim*.  Instead, the Ninth Circuit engaged in a limited analysis of such slackfill claim by affirming its dismissal solely because "the lip product falling below the stop device does not meet the definition of actionable slackfill."[7]  *Id.* at 967.  The complaint had alleged that the portion of the product below the mechanical stop device constituted nonfunctional slack fill, but the CFPLA defined slackfill to mean "empty space."  *Id.*

*Ebner* is distinguishable.  First, Defendant, by referring to the "net weight label" "affixed to every tube," (Def.'s Mem. at 8:9), relies on the portion of *Ebner* (Section III.B) relating to "design and packaging claims," *Ebner*, 838 F.3d at 967, which is separate and apart from the claim asserting unlawful slack-fill, which was separately addressed in Section III.C.  Thus, Defendant's attempt to conflate *Ebner*'s analysis of the "design and packaging claims" with its limited analysis of the slack-fill claim should be rejected.

Second, although *Ebner* applied the reasonable consumer test to the plaintiff's "design and packaging claims," *id.* at 967, and relied on the "accurate net weight label" affixed to "every . . . tube and its accompanying cardboard box," *id.*, the Ninth Circuit did not address the effect, if any, of the FDA's guidance in 21 C.F.R. § 100.100 as to the effect of an accurate net weight statement on food packaging that contains nonfunctional slackfill.[8]  Cases are not precedents for propositions that are not considered.  *Webster v. Fall*, 266 U.S. 507, 511 (1925) ("Questions which merely lurk in the record, neither brought to the attention of the court *nor ruled upon*, are not to be considered as having been so decided as to constitute precedents.") (emphasis added).

---

[7] Indeed, the California Superior Court held, "*Ebner v. Fresh, Inc.*, 838 F.3d 958 (2016) is not a slack fill case." *Arcala v. Golden Grain Co.,* No. CGC – 16-555084, slip op. at 2:22-23 (Cal. Super. Ct. Apr. 5, 2017).

[8] The FDA's final rule states that the "FDA finds that the presence of an accurate net weight statement does not eliminate the misbranding that occurs when a container is made, formed, or filled so as to be misleading."  *See* Misleading Containers; Nonfunctional Slack-Fill, 58 Fed. Reg. 64123, 64128, 1993 WL 498605 (Dec. 6, 1993) (codified at 21 C.F.R. pt. 100).

In *Arcala*, *supra*, the California Superior Court noted that certain case law cited by the defendant therein "directly conflicts with the FDA's guidance on whether accurate statements regard net weight on a package label are sufficient to evade liability under slack-fill laws." *Id.* at 2:23-25.

Third, besides the net weight statement, the Ninth Circuit also relied upon numerous other factors including the sale of the product at issue in the "high-end cosmetics market," the necessity of "additional weight at the bottom of the tube" to keep it upright, and the "commonplace" nature of the "weighty feel of the tube" and "elaborate packaging". *Id.* at 967. ***None of those additional factors are relevant to the instant action***. Thus, *Ebner* fails to provide any support for Defendant's position.

### 11.   *Bush v. Mondelez Int'l, Inc.* **Is Distinguishable.**

Defendant also relies heavily upon *Bush v. Mondelez Int'l, Inc.*, No. 16-cv-02460-RS, 2016 WL 5886886 (N.D. Cal. Oct. 7, 2016) ("*Bush I*"). (Def.'s Mem. at 8:15-19.) *Bush I* is unpersuasive. First, the plaintiff in that particular action failed to argue to the court in *Bush I* that it should consider the FDA's guidance on 21 C.F.R. § 100.100 as to the effect of an accurate net weight statement on food packaging that contains nonfunctional slack-fill. This is clear because in *Bush v. Mondelez Int'l, Inc.*, No. 16-cv-02460-RS, 2016 WL 7324990 (N.D. Cal. Dec. 16, 2016) ("*Bush II*"), the district court made reference to its prior ruling in *Bush I*, *see Bush II*, 2016 WL 7324990, at *2, and pointed out the plaintiff's "new[]" argument regarding such FDA guidance.[9]  *Bush II*, 2016 WL 7324990, at *3.

Second, although the court in *Bush I* cited *Ebner* and described it as a "slack-fill lawsuit," 2016 WL 5886886, at *3, the *Bush I* court failed to recognize that the portions it cited with approval were in the context of the "design and packaging" claims. *Id.*

---

[9] Although the *Bush II* decision considered the plaintiff's argument that "the prior order conflicts with FDA guidance on 21 C.F.R. § 100.100," 2016 WL 7324990, at *3, the court treated such argument dismissively as arguably waived, and then stated that the FDA guidance document is not "binding authority." *Id.* at *3. Regardless of whether such guidance document is "binding" or not, the district court appears to have ignored the well-established rule as articulated in *Fortyune v. City of Lomita*, 766 F.3d 1098, 1102 (9th Cir. 2014), *cert. denied*, 135 S. Ct. 2888 (2015), that "[a]n agency's interpretation of its own regulations is entitled to deference." *Id.* at 1104 (citing *Auer v. Robbins*, 519 U.S. 452, 461 (1997)). The only exception would be if such interpretation is "plainly erroneous or inconsistent with the regulation." *Id.* (citation omitted). Significantly, the *Bush II* court made no such finding. This underscores the frailty of its analysis.

Third, *Bush I* sought to analogize to *Ebner* by stating that "there is no deceptive act to be dispelled." *Id.* *Bush I*, however, omitted to address whether the packaging itself can be viewed as deceptive. *Younger*, 101 Cal. App. 3d at 368 ("slack fill can be viewed as inherently deceptive").

Fourth, *Bush I* did not distinguish any of the decisions that are favorable to Plaintiff's position, and misapplied the plausible pleading requirement.

### 12. *Martinez-Leander v. Wellnx Life Sciences, Inc.* Is Unpersuasive.

Defendant's reliance on *Martinez-Leander v. Wellnx Life Sciences, Inc.*, No. CV 16-08220 SJO (Ex), 2017 WL 2616918, at *8 (C.D. Cal. Mar. 6, 2017) (Def.'s Mem. at 8:20-24), is misplaced because that decision merely cited in conclusory fashion to a single decision, *i.e.*, *Bush I*. In other words, the decision in *Martinez-Leander* lacks any independent analysis of its own. *United States v. Fast*, 709 F.3d 712, 719 (8th Cir. 2013) ("These decisions, lacking detailed analysis, are unpersuasive."). As such, it is beyond dispute that *Martinez-Leander* is unpersuasive.

### 13. *Gonzales v. Peter Thomas Roth Labs, LLC* Is Distinguishable.

Defendant's reliance upon *Gonzales v. Peter Thomas Roth Labs, LLC*, 2017 WL 5633274 (C.D. Cal. Nov. 17, 2017), is misplaced because that decision is factually distinguishable. First, the plaintiff therein did not assert any "slack-fill" claims. Rather, that plaintiff asserted the violation of section 12606(a) of the Business and Professions Code, which provides that no container shall have a false bottom that "facilitate[s] the perpetration of deception or fraud," and not a nonfunctional slack-fill claim for non-food containers brought under section 12606(b).

Second, like *Ebner*, the district court in *Gonzales* did not address the effect, if any, of the FDA's guidance in 21 C.F.R. § 100.100 as to the effect of an accurate net weight statement on packaging that contains nonfunctional slackfill. This should not be surprising given that no slack-fill claim was pled in *Gonzales*.

Third, in *Gonzales*, the court distinguished *Escobar* by noting:

"In this case, by contrast, the net weight disclosure [on the front of the packaging] is accompanied by a photos of the jar inside, *and* a notice that the photo represents the Product's actual size.  Accordingly, a reasonable purchaser of Defendant's Product would be aware of how the net weight on the outside corresponded to the amount of face cream inside."

*Id.* at *3 (emphasis in original).  Thus, the *Gonzales* court relied upon a ***combination*** of ***three*** separate and distinct qualifiers (two of which were very strong, *i.e.*, photos of the enclosed jar and the notice) in order to hold that the consumer therein could not satisfy the reasonable consumer test as a matter of law.

Here, in contrast, no similar combination of ***strong*** purported qualifiers are alleged to exist.  Although Defendant references its Nutrition Facts side panel chart,[10] (Def.'s RJN Ex. 1), Defendant omits to mention that such chart is on the ***side*** of the packaging.  (Def.'s RJN Ex. 1.)  As mentioned above, that location matters.  *Williams*, 552 F.3d at 940 (holding that an ingredient list printed on the side of Gerber's "fruit juice snacks" did not cure the deception caused by pictures of various fruits on the front suggesting, falsely, that the product contained juice from those fruits); *Brady*, 237 Cal. Rptr. 3d at 692-93 (addressing the front-back dichotomy); *id.* at 698 (rejecting the assumption that consumers of vitamins are "back-label scrutinizers" as "untenable").  As mentioned above, *Brady* held that a "back label . . . list that conflicted with, rather than confirming, a front label claim could not defeat an action."  *Id.* at 693.  Reasoning by analogy, a side panel that ***conflicts*** with, rather than ***confirms***, a claim based on the size of packaging, which is inherently deceptive, *Younger*, 101 Cal. App. 3d at 368 ("slack fill can be viewed as inherently deceptive"), cannot defeat a CLRA action.

### 14.   *Fermin v. Pfizer Inc.* Is Distinguishable.

Defendant's reliance on *Fermin v. Pfizer Inc.*, 215 F. Supp. 3d 209 (S.D.N.Y. 2016), is distinguishable because that decision did not address the effect, if any, of the

---

[10] The chart is a weak qualifier, at best, because it fails to depict precisely how many fries are contained in the Product's packaging.

1  FDA's guidance in 21 C.F.R. § 100.100 as to the effect of an accurate net weight
2  statement on food packaging that contains nonfunctional slackfill.  In addition, *Fermin*
3  failed to acknowledge that the size of packaging itself is inherently deceptive under
4  California law.  *Younger*, 101 Cal. App. 3d at 368.

5  Finally, although *Fermin* purported to apply California law, it failed to recognize
6  that ***California's*** reasonable consumer standard raises questions of fact that are
7  inappropriate for resolution on a motion to dismiss.  *Williams*, 552 F.3d at 939; *Brady*,
8  237 Cal. Rptr. 3d at 689.  *Fermin* should not have engaged in the "weighing of evidence
9  from both sides."  *Brady*, *id.* at 689.  Indeed, although the district court relied upon
10 *Freeman v. Time*, 68 F.3d 285 (9th Cir. 1995), which was decided over twenty years
11 ago, *Fermin* omitted to mention that "[t]he Ninth Circuit has, more recently, emphasized
12 that it is appropriate only 'in rare situations' to dismiss CLRA, FAL, and UCL claims—
13 as a matter of law—for failure to plausibly allege that reasonable consumers would
14 likely be deceived by food packaging."  *Stiles*, 2017 WL 3084267, at *4 (citing *Reid,*
15 780 F.3d at 958) ("the reasonable consumer standard . . . . raises questions of fact that
16 are appropriate for resolution on a motion to dismiss only in 'rare situation[s].'")
17 (quoting *Williams*, 552 F.3d at 939).  "'Whether a practice is deceptive, fraudulent, or
18 unfair is generally a question of fact which requires 'consideration and weighing of
19 evidence from both sides' and which usually cannot be made on demurrer.'"  *Brady*, 237
20 Cal. Rptr. 3d at 689 (citations omitted).  Thus, *Fermin* omitted key guidance from the
21 Ninth Circuit.

22 In summary, at this early stage in the case without an opportunity to include the
23 results of discovery, Plaintiff submits that the reasonable consumer inquiry is premature
24 to resolve via the instant Motion to Dismiss.  At minimum, Plaintiff submits that enough
25 facts have been alleged in the FAC to suggest that the product packaging at issue in this
26 case "may" mislead a reasonable consumer.[11]  *Escobar*, 2017 WL 5125740, at *8.

27 ─────────────
[11] Notably, California courts have rejected federal case authority imposing an "extrinsic
28 evidence" requirement to prove that the public is likely to be deceived.  *Colgan*, 135
Continued on the next page

─────────────
- 17 -

1  Defendant's implicit attempt to apply a "most sophisticated, wary, or expert consumer"
2  standard, *Lavie*, 105 Cal. App. 4th at 508, should be rejected.

3  **C.    The "Unfair" Prong of the UCL Is Sufficiently Pled.**

4  Defendant's analysis, which relies on paragraph 58 of the FAC, is flawed because
5  it ignores the fact that the UCL claim incorporates by reference the prior allegations in
6  the FAC, which amply identify the factual allegations as to why Defendant's product
7  packaging violates the "unfair" prong of the UCL.  (FAC ¶¶ 1, 3-4, 9, 13-25, 41-51.)
8  This Court need not determine which legal standard to apply under the "unfair" prong of
9  the UCL because under all of the potential choices, such factual allegations satisfy all of
10  them.  As explained by the California Court of Appeal, the size of packaging itself is
11  inherently deceptive under California law.  *Younger*, 101 Cal. App. 3d at 368.

12  **D.    The "Unlawful" Prong of the UCL Is Sufficiently Pled.**

13  Defendant's analysis of the "unlawful" prong of the UCL claim is equally flawed
14  because it is predicated on the mistaken assumption that the FAC fails to plead plausible
15  facts demonstrating a violation of section 12606.2(b) and (c) of the California Business
16  and Professions Code, which prohibits nonfunctional slack-fill in food containers.

17  **E.    The Ninth Circuit Allows Doe Defendants.**

18  Although Defendant has challenged the inclusion of Doe defendants in its Motion
19  to Dismiss, (Mtn. Dism. at 13), the use of Doe defendants has been explicitly condoned
20  by the Ninth Circuit.  *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980).  Indeed,
21  the Central District of California expressly allows up to ten Doe or fictitiously named
22  parties.  Central District of California Local Rule 19-1.  Is the Central District of
23  California in violation of Ninth Circuit binding precedent?

24  / / /

25  / / /

26  _____

27  Continued from the previous page
   Cal. App. 4th at 681-82.  Thus, expert testimony or consumer surveys are unnecessary.
28  *Id.* at 681.  The primary evidence is the advertising itself.  *Id.* at 682.

1

### F.     Leave to Amend Should Be Granted.

Rule 15(a)(2) of the Federal Rules of Civil Procedure provides that "[t]he court should freely give leave [to amend] when justice so requires." In fact, the Ninth Circuit has previously held that whenever a district court dismisses a case, it "should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (quoting *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995)). Thus, if the Court is inclined to grant the instant Motion due to a curable pleading deficiency, this Court can and should grant Plaintiff leave to amend to file a Second Amended Complaint.

### G.     Plaintiff Did Not Purchase the Product to "Manufacture" This Lawsuit.

The FAC alleges that "Plaintiff purchased the Product for the purpose of enjoying its contents by consuming (eating) the food item." (FAC ¶ 3.) Defendant contends that "Plaintiff has changed tack" by making the foregoing allegation "[i]n an obvious attempt to avoid the" "dual purpose" referenced in the original Complaint. (Def.'s Mem. at 2:14-19.)

It is black letter law in the Ninth Circuit that "an amended complaint supercedes the original complaint and renders it without legal effect[.]" *Lacey v. Maricopa County*, 693 F.3d 896, 927 (9th Cir. 2012). Thus, other than making an unseemly attempt to bias the Court, it is frankly baffling why Defendant would make reference to allegations that were inadvertently included in the original Complaint (along with other corrections, which were intended to "clean up" the original Complaint in hopes of avoiding needless and wasteful motion practice as to the FAC) given that the FAC is the operative pleading. Indeed, Defendant has attempted to depict the extensive nature of the

revisions made in good faith to the original Complaint, which are reflected in the FAC.[12] Mtn. Dism. FAC Ex. A; Dkt. 19 at pgs. 22-43 of 43.

Defendant's reference to superceded allegations in the original Complaint is sour grapes, plain and simple, and intended to distract the Court from evaluating the FAC's operative allegations.   *Bruno v. Quten Research Inst., LLC*, 280 F.R.D. 524, 534 (C.D. Cal. 2011) ("The Court is troubled that Defendants have devoted valuable pages in their Opposition to an apparent smear campaign . . . .").

## IV.   CONCLUSION

For the foregoing reasons, it is respectfully requested that the Court deny the motion, and grant such further and other relief as it deems appropriate.


Dated:  October 12, 2018                    PACIFIC TRIAL ATTORNEYS, P.C.

                                            By:  */s/ Scott J. Ferrell*
                                            Scott. J. Ferrell
                                            Attorney for Plaintiff

---

[12] For purposes of this Motion only, Plaintiff does not dispute that Ex. A to Defendant's Motion to Dismiss the FAC is a largely accurate redline comparison between the original Complaint and the FAC.  Plaintiff has not evaluated such Exhibit on a line-by-line basis to evaluate its precise accuracy.

1

**CERTIFICATE OF SERVICE**

2
I hereby certify that on October 12, 2018, I electronically filed the foregoing

3
**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF**

4
**PLAINTIFF'S RESPONSE IN OPOSITION TO DEFENDANT'S MOTION TO**

5
**DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT** with the Clerk of the

6
Court using the CM/ECF system which will send notification of such filing via electronic

7
mail to all counsel of record.

8

9
*/s/ Scott J. Ferrell*
Scott J. Ferrell

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28