**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ANGELA KENNARD,<br><br>Plaintiff,<br><br>vs.<br><br>LAMB WESTON HOLDINGS, INC.,<br><br>Defendant. | CASE NO. 18-cv-04665-YGR<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS SECOND AMENDED COMPLAINT**<br><br>Re: Dkt. No. 39 |

Pending before the Court is defendant Lamb Weston Holdings, Inc.'s motion to dismiss plaintiff's second amended complaint. (Dkt. No. 39 ("MTD"); *see also* Dkt. No. 38 ("SAC").)[1] For the reasons set forth below, the Court **GRANTS IN PART AND DENIES IN PART** defendant's motion.

**I. BACKGROUND**

Plaintiff is a California citizen who resides in San Francisco, California. (SAC ¶ 9.) Defendant is a Delaware corporation with its principal place of business located in Eagle, Idaho. (*Id*. ¶ 10.) Plaintiff brings this class action alleging that defendant "unlawfully and unfairly packag[ed] its ALEXIA brand SWEET POTATO fries WITH SEA SALT product [the 'Alexia product'] in opaque containers that contain more than 50% empty space." (*Id*. ¶ 1.)

Plaintiff contends that she purchased the Alexia product "several times during 2017 and 2018 in Daly City," only to be "surprised when she opened the product that the container had **more than 50% empty space**, or slack-fill." (*Id*. ¶ 3 (emphasis in original).) Plaintiff does not deny that the Alexia product labels accurately disclose the product's net weight, the number of

---

[1] The Court previously vacated the hearing set for March 19, 2019 pursuant to Federal Rule of Civil Procedure 78(b) and Civil Local Rule 7-1(b). *See* Dkt. No. 45.

fries per serving, and the approximate number of servings per container. Namely, the package indicates that the bag has "[a]bout 6 servings per container" and that a serving size is "3 oz (84g/12 pieces)."[2] Instead, plaintiff argues that the container size leads reasonable consumers to believe that there will be more fries than there actually are. (*Id.* ¶ 30.) Specifically, plaintiff avers that the Alexia product's "packaging size" was a "material factor" in making her purchase decisions and claims she would not have purchased the Alexia product had she known the "true facts . . . concerning [d]efendant's representations[.]" (*Id.* ¶¶ 30, 57, 69, 79.) Because "[t]he containers (1) do not allow consumers to fully view its [sic] contents; and (2) contains [sic] nonfunctional slack fill[,]" plaintiff contends that the packaging is "per se illegal." (*Id.* ¶ 26.)

Plaintiff filed her initial complaint on August 2, 2018. (Dkt. No. 1.) After defendant moved to dismiss and strike the complaint with prejudice pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(6), and 12(f), plaintiff filed a first amended complaint. (Dkt. Nos. 8, 16 ("FAC").) Accordingly, the Court denied the motion to dismiss as moot. (Dkt. No. 17.) Defendant subsequently moved to dismiss the FAC, which the Court granted in part and denied in part, giving plaintiff leave to amend its claims under the Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750 *et seq.*, the "unlawful" and "unfair" prongs of the Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 *et seq.*, and the False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500 *et seq.* (Dkt. Nos. 19, 34.)

---

[2] The SAC includes only a partial image of the Alexia product labels. *See* SAC ¶ 25. A plaintiff, however, cannot "surviv[e] a Rule 12(b)(6) motion by deliberately omitting references to documents upon which their claims are based." *Parrino v. FHP, Inc.*, 146 F.3d 699, 706 (9th Cir. 1998), *as amended* (July 28, 1998), *superseded by statute on other grounds as stated in Steinle v. City & Cty. of S.F.*, No. 17-16283, 2019 WL 1323172 (9th Cir. Mar. 25, 2019). Defendant has provided a more complete image of the labels. *See* Dkt. No. 40 at ECF p. 5. A court may consider evidence on which the complaint "necessarily relies" if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion. *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006). Here, the product labels are central to plaintiff's claim, and plaintiff does not challenge the authenticity of the images provided by defendant. Accordingly, defendant's request for judicial notice is **GRANTED**.

On January 15, 2019, plaintiff filed the operative SAC. Therein, plaintiff seeks to represent the following class of California consumers: *All California residents who made retail purchases of Defendant's ALEXIA brand SWEET POTATO fries product during the applicable limitations period up to and including final judgment in this action*. (SAC ¶ 34.) The SAC is virtually identical to plaintiff's FAC, with the exception of: (i) six additional paragraphs concerning each statutory slack fill safe harbor provision under California Business and Professions Code section 12606.2(c)(1)–(6), (*see* SAC ¶¶ 15–20); and (ii) allegations regarding consumers' handling practices as to frozen foods, (*see id*. ¶¶ 22–23). Plaintiff asserts the same three claims for relief as in his FAC, namely violations of the CLRA, UCL, and FAL. Defendant moves to dismiss each.

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), an action may be dismissed for "failure to state a claim upon which relief can be granted." Dismissal is appropriate where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). When considering a motion to dismiss, a court must accept as true all "well-pleaded factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Furthermore, the court must construe these well-pleaded factual allegations in the light most favorable to the plaintiff. *NL Indus., Inc. v. Kaplan*, 792 F.2d 896, 898 (9th Cir. 1986). The complaint must allege "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). It must contain factual allegations sufficient to "state a claim to relief that is plausible on its face." *Id*. at 570. "In sum, for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009).

Claims alleging fraud must also meet the heightened pleading standard of Rule 9(b). Fed. R. Civ. P. 9(b). Rule 9(b) requires "an account of the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." *Swartz v.*

3

*KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (internal quotation marks omitted). To comply with the Rule 9(b) pleading standard, allegations of fraud "must be specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Id.* (quoting *Bly-Magee v. Cal.*, 236 F.3d 1014, 1019 (9th Cir. 2001)). That is, plaintiff must specifically set forth what is false or misleading about a statement and why it is false. *Cardenas v. NBTY, Inc.*, 870 F. Supp. 2d 984, 990 (E.D. Cal. 2012) (citing *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003)).

## III. DISCUSSION

### A. Plaintiff's Theories of Liability

Plaintiff's SAC is based on two theories of liability. First, consumer deception, namely plaintiff alleges that the Alexia product packages are misleading because consumers expect more sweet potato fries than are actually included. Second, slack fill, namely plaintiff alleges that the Alexia product packaging is unlawful because it violates the California Fair Packaging and Labeling Act's ("CFPLA") regulation against nonfunctional slack fill, specifically Business & Professions Code section 12606.2. More specifically, plaintiff explained that both her CLRA claim and the unfair prong of her UCL claim are predicated on both theories of liability; her FAL claim and the fraudulent prong of her UCL claim are based on the consumer deception theory only; and the unlawful prong of her UCL claim is based on the nonfunctional slack fill theory only. (*See* Dkt. Nos. 47, 48.) The Court addresses each theory of liability in turn.

#### 1. *Consumer Deception Theory*

##### a. Reasonable Consumer Test

Plaintiff's claims under the CLRA, UCL, and FAL are governed by California law. The Ninth Circuit has explained:

> California's Unfair Competition Law ("UCL") prohibits any "unlawful, unfair or fraudulent business act or practice." Cal. Bus. and Prof. Code § 17200. The false advertising law prohibits any "unfair, deceptive, untrue, or misleading advertising." Cal. Bus. and Prof. Code § 17500. "'[A]ny violation of the false advertising law . . . necessarily violates' the []UCL." *Kasky v. Nike, Inc.*, 27 Cal.4th 939, 950, 119 Cal.Rptr.2d 296, 45 P.3d 243 (2002) (quoting *Comm. on Children's Television, Inc.*

4

*v. General Foods Corp.*, 35 Cal.3d 197, 210, 197 Cal.Rptr. 783, 673 P.2d 660 (1983)). California's Consumer Legal Remedies Act ("CLRA") prohibits "unfair methods of competition and unfair or deceptive acts or practices." Cal. Civ. Code § 1770.

> [A plaintiff's] claims under these California statutes are governed by the "reasonable consumer" test. *Freeman v. Time, Inc.*, 68 F.3d 285, 289 (9th Cir. 1995) ("[T]he false or misleading advertising and unfair business practices claim must be evaluated from the vantage of a reasonable consumer." (citation omitted)); *Lavie v. Procter & Gamble Co.*, 105 Cal.App.4th 496, 506–07, 129 Cal.Rptr.2d 486 (Cal.App.2003) ("[U]nless the advertisement targets a particular disadvantaged or vulnerable group, it is judged by the effect it would have on a reasonable consumer.").

*Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008).

Under the reasonable consumer standard, a plaintiff must "show that 'members of the public are likely to be deceived.'" *Freeman*, 68 F.3d at 289 (quoting *Bank of the West v. Superior Court*, 2 Cal. 4th 1254, 1267 (1992)). "'Likely to deceive' implies more than a mere possibility that the advertisement might conceivably be misunderstood by [a] few consumers viewing it in an unreasonable manner." *Lavie*, 105 Cal. App. 4th at 508. Rather, the reasonable consumer standard requires a probability that a "significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled." *Id.*

With respect to a false advertising case, the "primary evidence" is the "advertising itself." *Brockey v. Moore*, 107 Cal. App. 4th 86, 100 (2003). The Ninth Circuit has recognized that the question of whether advertising materials are deceptive to a reasonable consumer "will usually be a question of fact not appropriate for decision" at the pleading stage. *Williams*, 552 F.3d at 938. However, actions may be dismissed under the reasonable consumer test when "the advertisement itself [makes] it impossible for the plaintiff to prove that a reasonable consumer was likely to be deceived." *Id.* at 939; *see also Ebner v. Fresh, Inc.*, 838 F.3d 958, 965 (9th Cir 2016) (affirming dismissal of deceptive advertising claims where the plaintiff's "claim that the reasonable consumer would be deceived" was "not plausible"); *Martinez-Leander v. Wellnx Life Scis., Inc.*, No. CV 16-08220 SJO (Ex), 2017 WL 2616918, at *8 (C.D. Cal. Mar. 6, 2017) (dismissing deceptive advertising claims based on nonfunctional slack fill where "no reasonable consumer could have been misled" by product packaging).

b. <u>Application to Plaintiff's Claims</u>

Plaintiff alleges that Alexia product packages are misleading because consumers expect more fries than are actually included. (SAC ¶ 30.) Defendant argues that the product's packaging would not deceive a reasonable consumer in light of the unit counts, net weight, and serving size stated on the package. (MTD at 6–9.) The Court agrees that plaintiff's claim that the reasonable consumer would be deceived as to the amount of fries in an Alexia product package is not plausible.

In *Ebner v. Fresh, Inc.*, 838 F.3d 958 (9th Cir. 2016), which plaintiff attempts to distinguish, the Ninth Circuit affirmed the dismissal of deceptive advertising claims on the ground that the plaintiff failed to state a plausible claim for consumer deception. There, the plaintiff alleged that the defendant deceived consumers about the amount of product in its lip balm. She claimed the tube was deceptive because it contained a weighted metallic bottom (which made the box feel heavier), was wrapped in oversized packaging, and used a mechanism that allows only 75% of the product to advance up the tube. *Id*. at 962. The Ninth Circuit concluded that the plaintiff had not, and could not, allege facts to state a plausible claim of consumer deception.[3] It noted that "an accurate net weight label is affixed to every . . . tube and its accompanying cardboard box" and concluded that, "the reasonable consumer . . . understands that some additional weight at the bottom of the tube—not consisting of product—may be required to keep the tube upright." *Id*. at 967. It further reasoned that "elaborate packaging and the weighty feel of the tube is commonplace and . . . [b]ecause of the widespread nature of this practice, no reasonable consumer expects the weight or overall size of the packaging to reflect directly the quantity of product contained therein." *Id*. While *Ebner* involved a cosmetic product, nothing in the decision suggests that the Ninth Circuit's application of the reasonable consumer test under state consumer

---

[3] Of note, the district court in *Ebner* had granted the defendant's motion to dismiss, noting that "Plaintiff points to no cases in which such packaging, when paired with an accurate net quantity label, . . . constituted deceptive marketing practices." *See Ebner v. Fresh Inc.*, No. SACV 13-00477 JVS(RNBx), 2013 WL 9760035, at *7 (C.D. Cal. Sept. 11, 2013).

6

protection laws would have been different in the context of food.[4]

Plaintiff focuses on *Williams* to discount the importance of the serving size and unit disclosures because they appear on the *side* of the Alexia product's packaging.[5] However, *Williams* is factually distinguishable from the case at hand. In *Williams*, parents of small children brought a class action against Gerber based on the allegedly deceptive packaging of Fruit Juice Snacks, a food product for toddlers. *Williams*, 552 F.3d at 936. The two most prominent ingredients of Fruit Juice Snacks were corn syrup and sugar, and the only fruit or juice content was white grape juice from concentrate. Despite the foregoing, the product: (1) was named "Fruit Juice Snacks"; (2) had images of fruits such as oranges, peaches, strawberries, and cherries on the box; (3) stated that it was made "with real fruit juice and other natural ingredients"; and (4) stated that it was "one of a variety of nutritious Gerber Graduates foods and juices that have been specifically designed to help toddlers grow up strong and healthy." *Id*. at 936, 939. The Ninth Circuit concluded that these features on the packaging would lead a reasonable consumer to believe falsely that the product contained the pictured fruits and that all of the ingredients were natural. *Id*. at 939. *In light of such deceptive packaging*, the court rejected Gerber's use of the ingredient list as a "shield for liability for the deception[,]" explaining that a reasonable consumer is not "expected to look beyond misleading representations on the front of the box to discover the truth from the ingredient list in small print on the side of the box." *Id*. Said differently, and

---

[4] Indeed, California district courts have applied *Ebner* in the food and other contexts. *See, e.g., Bush v. Mondelez Int'l, Inc.*, No. 16-cv-02460-RS, 2016 WL 5886886, at *3 (N.D. Cal. Oct. 7, 2016) ("*Bush I*") ("Here, as in *Ebner*, it is undisputed that the Go-Pak product labels disclose the net weight of included product, as well as the number of cookies or crackers per container."); *Martinez-Leander*, 2017 WL 2616918, at *8 ("Here, like in *Ebner* and *Bush*, Defendants have listed the exact number of pills each bottle contains on the labels of both the external box and the pill container.").

Separately, While plaintiff argues that the size of the packaging itself is a deceptive act, the plaintiff in *Ebner* similarly alleged that oversized packaging was deceptive, and the Ninth Circuit nevertheless found "the weight label does not contradict other representations or inferences on [defendant's] packaging." *Ebner*, 838 F.3d at 966.

[5] Plaintiff also cites *Brady v. Bayer Corporation*, 26 Cal. App. 5th 1156 (2018), which relied on *Williams* in its discussion of the "front-back dichotomy." *Id*. at 1167–68.

7

"straightforwardly, *Williams* stands for the proposition that *if* the defendant commits an act of deception, the presence of fine print revealing the truth is insufficient to dispel that deception." *Ebner*, 838 F.3d at 966 (emphasis in original).

Here, it is undisputed that the Alexia product packaging discloses the product's net weight, the number of fries per serving, and the approximate number of servings per container. The Alexia product's weight label and serving size statement do not contradict other representations or inferences from defendant's packaging. "[T]here are no other words, pictures, or diagrams adorning the packaging, as there were in *Williams*, from which *any* inference could be drawn or on which *any* reasonable belief could be based about how much . . . product" is included. *Id*. (emphases in original). "In the absence of any statement or other depiction anywhere on the package about [the quantity of fries], . . . it is not plausible that a 'significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled' into thinking" the container would be "filled to the brim with [p]roduct." *Ebner*, 838 F.3 at 966 (quoting *Lavie*, 129 Cal. Rptr. 2d at 495); *Escobar v. Just Born Inc.*, 17-cv-08126-BRO (PJW), 2017 WL 5125740, at *10 (C.D. Cal. June 12, 2017).

In accordance with *Ebner*, many district courts have found that where the package itself discloses the actual unit counts, a "reasonable consumer" could not be misled. *See, e.g., Martinez-Leander*, 2017 WL 2616918, at *8 (where plaintiff alleged that defendants' herbal supplements were deceptively packaged in slack-filled containers, court rejected theory because "Defendants ha[d] listed the exact number of pills each bottle contain[ed] on the labels of both the external box and the pill container"); *Bush I*, 2016 WL 5886886, at *3 (where plaintiff alleged that he was deceived as to the amount of snack in the packaging of travel-size snack products, court rejected theory because it was "undisputed that the Go-Pak product labels disclose[d] the net weight of included product, as well as the number of cookies or crackers per container"); *Fermin v. Pfizer Inc.*, 215 F. Supp. 3d 209, 211–12 (E.D.N.Y. 2016) (where purchasers of Advil alleged that they were tricked into purchasing the medicine due to the size of Advil's packaging, the court, applying California law, determined "as a matter of law, . . . it is not probable or even possible that Pfizer's packaging could have misled a reasonable consumer" because "each of the packages in Plaintiffs'

8

Complaint clearly display[s] the total pill-count on the label").[6]

Plaintiff points to *Escobar* to argue otherwise. There, the plaintiff alleged that the defendant's advertising was misleading because the reasonable consumer would not understand when purchasing Mike and Ike and Hot Tamales candy that the amount of candy purchased was significantly less than the visible size of the packaging. *Id*. at *8. Unlike the instant case, *Escobar* did not involve the disclosure of actual unit counts. The court held:

> In the Court's view, a reasonable consumer is not necessarily aware of a product's weight or volume and how that weight or volume correlates to the product's size. In other words, the fact that the Products' packaging accurately indicated that a consumer would receive 141 grams or 5 ounces of candy does not, on its own, indicate to a reasonable consumer that the Products' box may not be full of candy and that, instead, 35.7% of the box is empty. Rather, a reasonable consumer may believe that 141 grams or five ounces of candy is equivalent to an amount approximately the size of the Products' box.

*Id*. at *9. However, the court critically noted: "This case is distinguishable from *Bush*, where the product's packaging indicated the *number* of cookies the package contained, giving the consumer a reasonable expectation of the product's contents beyond just the weight." *Id*. (emphasis in original). The only other cited in-circuit district court case does support plaintiff's theory despite the disclosure of the number of pretzels contained in each package. *See Cordes v. Boulder Brands*

---

[6] As a general matter, plaintiff argues that the cases on which defendant relies, including *Fermin*, are distinguishable because they "did not address the effect, if any, of the FDA's guidance in 21 C.F.R. § 100.00 as to the effect of an accurate net weight statement on food packaging that contains non-functional slack-fill." Plaintiff's Response in Opposition to Defendant's Motion to Dismiss Plaintiff's SAC ("Opp.") at 17, Dkt. No. 41; *see also id*. at 13–16. However, whether *Fermin* or defendant's other cited cases considered the FDA's guidance is irrelevant. As the court in *Bush v. Mondelez Int'l, Inc.*, 16-cv-02460-RS, 2016 WL 7324990 (N.D. Cal. Dec. 16, 2016) ("*Bush II*") explained, "the FDA guidance document is not binding authority for purposes of [plaintiff's slack-fill] consumer deception claims. Those claims are brought under California consumer protection laws. Courts, not the FDA, determine whether a product is misleading under those laws." *Id*. at *3. For the same reason, plaintiff's argument that the FDA's final rule indicates that labeling statements cannot insulate a manufacturer from slack fill liability, (Opp. at 8), in addition to its argument concerning the legislative history of California's slack fill statute, are inapposite. Accordingly, plaintiff's request that the Court take judicial notice of the Bill Analysis of California Senate Bill 735 (1995 – 1996 Regular Session) of Senate Floor of 2/22/95, at p. 3 is **DENIED AS MOOT**.

9

*USA, Inc.*, No. CV 18-6534 PSG (JCx), 2018 WL 6714323 (C.D. Cal. Oct. 17, 2018).[7] There, the court found it was "at least plausible that a consumer could be deceived by a package filled with forty percent air, regardless of whether the number of pretzels in the package is displayed on the ingredient list." *Id*. at *7. Notably, the *Cordes* court did not discuss, let alone cite to, any of the cases applying California law which have held the opposite. *See id*.

      c.  <u>The Packaging is not "Inherently Deceptive"</u>

   Plaintiff attempts to expand the consumer deception theory by arguing as a general matter that the size of defendant's packaging itself is "*inherently deceptive*," and therefore the labeling statements cannot insulate defendant from liability. (Opp. at 7 (emphasis in original) (internal quotation marks omitted).) Plaintiff fails to persuade. She continues to rely heavily on *Hobby Industry Association of America, Inc. v. Younger*, 101 Cal. App. 3d 358 (1980) in support thereof. However, *Hobby*, is inapposite in the context of plaintiff's consumer deception theory.[8] That case involved a national trade association of the hobby products industry which sued the Attorney General for declaratory and injunctive relief, alleging that the Attorney General had erroneously interpreted and applied certain provisions of the CFPLA, and made no mention or holding as to the elements required of a private plaintiff bringing suit under California's consumer protection statutes. *See Turcios v. Carma Labs., Inc.*, 296 F.R.D. 638, 647 (C.D. Cal. 2014) (explaining *Hobby* court "made no holding as to the elements required to bring a private action predicated on the statute"). Moreover, plaintiff's "inherently deceptive" theory would eviscerate the normal elements of reliance and injury, which has no support in California law. *See Wilson v. Frito-Lay N. Am., Inc.*, 260 F. Supp. 3d 1202, 1208 (N.D. Cal. 2017) ("To prevail on their causes of action

---

  [7] Plaintiff otherwise relies on out-of-circuit cases that did not apply California law in support of her contention regarding unit disclosures. *See* Opp. at 10, 12 (citing *Izquierdo v. Mondelez Int'l, Inc.*, No. 16-CV-04697 (CM), 2016 WL 6459832 (S.D.N.Y. Oct. 26, 2016) and *In re McCormick & Co., Inc., Pepper Prods. Mktg. & Sales Practices Litig.*, 215 F. Supp. 3d 51 (D.D.C. 2016)).

  [8] Consistent with the Court's discussion herein regarding plaintiff's *nonfunctional slack fill theory of liability*, (*see infra* at 12–14), *Hobby* held that section 12606's "nonfunctional slack fill prohibition reaches all forms of nonfunctional slack fill (unless excepted)," "whether or not there is other proof of deception or fraud." *Hobby*, 101 Cal. App. 3d at 364, 366.

10

under the UCL, FAL, and the CLRA, Plaintiffs must demonstrate that they actually relied on the challenged misrepresentations and suffered economic injury as a result of that reliance."). The Court notes that the *only* cases that have cited *Hobby* for the proposition that the size of the packaging can be "inherently deceptive" are four district court cases from Missouri.[9] None is binding on this Court, let alone applied California law.

                d.      Plaintiff's Allegations Regarding Consumer Handling Practices as to Frozen Foods

Finally, plaintiff attempts to save her claims through new allegations regarding consumers' handling practices as to frozen foods. These are similarly unavailing. Specifically, the SAC alleges that "[i]t is common sense that consumers including [p]laintiff expend the least amount of time possible to touch and otherwise handle frozen food items, which is uncomfortable to the average adult, and that they seek to minimize their handling of frozen food items including [d]efendant's Product at a grocery store to the bare minimum in order to minimize their discomfort." (SAC ¶ 23.)[10] However, contrary to plaintiff's claims, consumers do not need to spend a lengthy period of time in order to "feel the [pliable] package and perceive the amount of product in the package before purchasing the [Alexia product]." *Buso v. Vigo Importing Co.*, No. 18cv1328-WQH-BGS, 2018 WL 6191390, at *5 (S.D. Cal. Nov. 28, 2018). Rather, "[a] reasonable consumer feels the amount of product in the package when picking it up off the shelf," and plaintiff has not described how a consumer could be plausibly misled by the packaging of the Alexia product, as opposed to a box or some other kind of packaging not susceptible to

---

[9] *See Hawkins v. Nestle U.S.A. Inc.*, 309 F. Supp. 3d 696, 703 n.2 (E.D. Mo. 2018); *Hawkins v. Nestle U.S.A. Inc.*, No. 4:17CV205 HEA, 2018 WL 746304, at *4 n.2 (E.D. Mo. Feb. 7, 2018); *White v. Just Born, Inc.*, No. 2:17-cv-04025-C-NKL, 2017 WL 3130333, at *4 n.2 (W.D. Mo. July 21, 2017); *Bratton v. Hershey Co.*, No. 2:16-cv-4322-C-NKL, 2017 WL 2126864, at *2 n.2 (W.D. Mo. May 16, 2017).

[10] Plaintiff argues that this allegation provides "important context" to explain "precisely why reasonable consumers do not necessarily 'feel' the empty space within a food product's bag packaging displayed in freezers." Opp. at 6. However, plaintiff, who admittedly purchased the Alexia product "several times," (SAC ¶ 3), presumably would have *seen* the contents of the package after her *first* purchase of the product and before her subsequent purchases.

11

manipulation. *Id*.[11]

   e.   Conclusion

In light of the foregoing, plaintiff fails to state a plausible claim of consumer deception based on the Alexia product's packaging. Plaintiff's CLRA, UCL (fraudulent and unfair prongs), and FAL claims are thus **DISMISSED WITH PREJUDICE** to the extent they are based on plaintiff's consumer deception theory.

### 2.   *Nonfunctional Slack Fill Theory*

With respect to slack fill, plaintiff does not bring a separate, free-standing claim for violation of Business & Professions Code section 12606.2. Rather, plaintiff alleges violations of that section as predicates of her UCL unfair and unlawful prong claims and her CLRA claim. Section 12606.2 states:

---

[11] The out-of-circuit cases on which plaintiff relies to support her proposition that "feeling the container is not within the proper scope of a motion to dismiss," (Opp. at 4–5 (citing *Bratton* and *Izquierdo*)), do not persuade and were not based on California law. While *Escobar* is based on California law, it is distinguishable because it involved a rigid *box*, which the plaintiff was "unable to inspect" or "otherwise manipulate" prior to purchase. 2017 WL 5125740, at *1 (internal quotation marks omitted); *id*. at *10 (noting "the candy Products are kept in a glass enclosure, and may be handed to the consumer only once the consumer has paid for their order").

Separately, plaintiff contends her allegation that "the average consumer spends a mere 13 seconds making an in-store purchasing decision," is "significant" and cites to three Missouri district court cases which considered this statistic in denying the motions to dismiss before those courts. Opp. at 6 (citing *Hawkins*, 309 F. Supp. 3d at 704; *White*, 2017 WL 3130333, at *1, *4; and *Bratton*, 2017 WL 2126864, at *1, *4, *6); *see also* SAC ¶ 1. However, as defendant notes, each of these cases was brought under Missouri's Merchandising Practices Act ("MMPA"), which the Missouri Supreme Court has characterized as "paternalistic legislation designed to protect those that could not otherwise protect themselves." *Hawkins*, 309 F. Supp. 3d at 701 (quoting *High Life Sales Co. v. Brown-Forman, Corp.*, 823 S.W.2d 493, 498 (Mo. 1992)); *see also White*, 2017 WL 3130333, at *2; *Bratton*, 2017 WL 2126864, at *3. "The Missouri Supreme Court has explained that an 'unfair practice' under the MMPA covers every unfair practice imaginable and every unfairness, to whatever degree." *Hawkins*, 309 F. Supp. 3d at 702. And, unlike California's consumer protection statutes at issue here, under the MMPA, "[a] plaintiff need not even allege or prove reliance on an unlawful practice to state a claim under the act." *Id*. Accepting plaintiff's argument regarding the significance of her 13-seconds allegation would effectively allow any plaintiff to avoid dismissal of similar claims by merely inserting that statistic into his or her complaint.

> A container that does not allow consumers to fully view its contents shall be considered to be filled as to be misleading if it contains nonfunctional slack fill.
>
> Slack fill is the difference between the actual capacity of a container and the volume of product contained therein. Nonfunctional slack fill is the empty space in a package that is filled to substantially less than its capacity for reasons other than any one or more of the following:
>
> (1) Protection of the contents of the package.
>
> (2) The requirements of the machines used for enclosing the contents in the package.
>
> (3) Unavoidable product settling during shipping and handling.
>
> (4) The need for the package to perform a specific function, such as where packaging plays a role in the preparation or consumption of a food, if that function is inherent to the nature of the food and is clearly communicated to consumers.
>
> (5) The fact that the product consists of a food packaged in a reusable container where the container is part of the presentation of the food and has value that is both significant in proportion to the value of the product and independent of its function to hold the food, such as a gift product consisting of a food or foods combined with a container that is intended for further use after the food is consumed or durable commemorative or promotional packages.
>
> (6) Inability to increase the level of fill or to further reduce the size of the package, such as where some minimum package size is necessary to accommodate required food labeling exclusive of any vignettes or other nonmandatory designs or label information, discourage pilfering, facilitate handling, or accommodate tamper-resistant devices.

Cal. Bus. & Prof. Code § 12606.2(c)(1)–(6). Plaintiff alleges that defendant intentionally packages its products in opaque containers comprised of more than 50% non-functional slack fill to mislead consumers. (SAC ¶¶ 1, 3, 25, 63, 65.) Defendant opposes, arguing that the Alexia product packaging falls within the permitted category for slack fill for "[p]rotection of the contents of the package." (Defendant's Reply ISO MTD ("Reply") at 10, Dkt. No. 42 (quoting Cal. Bus. & Prof. Code § 12606.2(c)(1)).)

The Court disagrees. According to plaintiff, "[m]ore than 50% of the interior of the [Alexia product's] containers is comprised of empty space, or non-functional slack-fill," and "[t]here is no practical reason for the non-functional slack-fill used to package the [p]roduct." (SAC ¶¶ 25, 31.) Plaintiff proceeds to elaborate with particularity:

13

> The [Alexia product] is . . . sold in freezers at retail stores including retailers such as Target department store. In fact, the front label of the [p]roduct's packaging contains a clear and unambiguous instruction to consumers at the bottom right hand corner . . . , "KEEP FROZEN." As such, the contents of the [p]roduct are sold to consumers in a frozen condition with ice crystals, which make the individual fries within the [p]roduct frozen. The [p]roduct is not sold to consumers in a dehydrated condition. In fact, [p]laintiff's factual investigation of the [p]roduct indicates that the individual fries within the [p]roduct are consistently frozen together into one combined lump of frozen fries, which has a hard texture just like ice does, and such lump of fries is not at all soft, tender, or otherwise flexible in their frozen state within the freezers. Given the frozen condition in which the [p]roduct is sold to consumers, the fries are not at any serious risk of breaking. Thus, the empty space in the [p]roduct packaging cannot be accounted for via the protection of the contents of the package.

(*Id.* ¶ 15.) In response, defendant argues the merits, contending that "any reasonable consumer would understand that sweet potato fries are long and skinny (frozen or not) and could therefore be broken without any extra space in the bag." (MTD at 13.) While defendant may ultimately be correct, determining whether a reasonable consumer would understand that sweet potato fries are "long and skinny" and thus susceptible to breakage absent extra room in the packaging is a question of fact not contained within the four corners of plaintiff's SAC.[12] The Court will thus not resolve it on a motion to dismiss.[13]

Accordingly, defendant's motion to dismiss plaintiff's remaining claims on the basis that she has not sufficiently alleged the presence of nonfunctional slack fill in the Alexia product packaging is **DENIED** as to plaintiff's CLRA and UCL (unlawful and unfair prongs) claims, to the extent they are predicated on plaintiff's nonfunctional slack fill theory of liability.

---

[12] Defendant's reliance on this Court's statement at the December 18, 2018 hearing—that "[j]ust because there is space, even if it's 50 percent, is not enough, in my view"—is misplaced. *See* Reply at 11 (quoting Dkt. No. 37 at 4:20–21). That comment was made in the context of plaintiff's consumer deception theory of liability, not her nonfunctional slack fill theory.

Moreover, the Court disagrees with plaintiff's suggestion that defendant intentionally omitted the portion of the front label of the Alexia product packaging containing the statement "KEEP FROZEN." Opp. at 22 n. 9.

[13] Since defendant does not argue that any of the other five safe harbors under section 12606.2 applies to justify the empty space in the Alexia product's packaging, the Court does not address plaintiff's allegations as to those other safe harbors herein.

14

**B.  Additional Arguments Under the UCL**

The Court, having found a basis for plaintiff's UCL claim under the unfair and unlawful prongs, addresses defendant's additional arguments regarding these specific prongs.

### *1.  "Unfair" Conduct Under the UCL*

The "unfair" prong of the UCL creates a cause of action for a business practice that is unfair even if not proscribed by some other law. *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1143 (2003). "The UCL does not define the term 'unfair.' . . . [And] the proper definition of 'unfair' conduct against consumers is 'currently in flux' among the California courts." *Davis v. HSBC Bank. Nev., N.A.*, 691 F.3d 1152, 1169 (9th Cir. 2012) (citing *Lozano v. AT&T Wireless Servs., Inc.*, 504 F.3d 718, 735 (9th Cir. 2007)). Some courts apply a balancing approach, which requires courts to "weigh the utility of the defendant's conduct against the gravity of the harm to the alleged victim." *Davis*, 691 F.3d at 1169 (internal quotation marks omitted). Others have held that "unfairness must be tethered to some legislatively declared policy or proof of some actual or threatened impact on competition." *Lozano*, 504 F.3d at 745 (internal quotation marks omitted).[14]

As predicates for her claim under the UCL's "unfair" prong, plaintiff alleges that defendant's conduct fails the balancing test because the conduct was "immoral, unethical, oppressive, and unscrupulous" and caused harm that "outweigh[ed] any alleged benefits" of the conduct. (SAC ¶ 66.) Plaintiff further alleges that defendant's conduct fails the tethering test because the conduct violated public policy as embodied in California Business & Professions Code sections 12606.2(b) and (c). (*Id.*)

---

[14] Defendant references a third test, which borrows from section 5 of the Federal Trade Commission Act, finding "unfair" business practices where (1) the consumer injury is substantial, (2) any countervailing benefit to consumers or competition do not outweigh the injury, and (3) the consumers could not reasonably avoid the injury. *See Camacho v. Auto. Club. of S. Cal.*, 142 Cal. App. 4th 1394, 1403 (2006). This test, however, does not apply in consumer cases and is therefore inapplicable here. *See Lozano*, 504 F.3d at 736 ("Though the California Supreme Court did reference FTC's section 5 as a source of 'guidance,' that discussion clearly revolves around anti-competitive conduct, rather than anti-consumer conduct.").

15

1         Defendant counters that plaintiff's claim under the balancing test fails for two reasons. First, plaintiff's allegations fail to allege plausibly any consumer deception, foreclosing any "harm to the alleged victim." (MTD at 10 (internal quotation marks omitted).) Second, plaintiff does not attempt to allege that her purported injury is outweighed by the "utility" of the empty space, namely to protect the sweet potato fries from damage. (*Id.* at 11 (internal quotation marks omitted).) As to the tethering test, defendant argues that the alleged conduct is not tethered to a "legislatively declared policy," but rather plaintiff's "lone allegation" is "wholly conclusory." (*Id.* (internal quotation marks omitted).)[15]

        While the Court agrees that plaintiff fails to allege any consumer deception, (*see supra* Section III.A.1.b), plaintiff sufficiently alleges that the Alexia product's slack fill is nonfunctional, (*see id.* Section III.A.2). Moreover, contrary to defendant's contention, plaintiff *does* allege that defendant's conduct is outweighed by the utility of the empty space. (*See* SAC ¶ 66.) In addition, while the Court agrees with defendant that plaintiff fails to allege any facts connecting defendant's conduct to a "legislatively declared policy," because plaintiff's allegations satisfy the balancing test, defendant's motion to dismiss plaintiff's UCL unfair prong claim on these additional proffered grounds is **DENIED**.

### 2.     *"Unlawful" Conduct Under the UCL*

        The "unlawful" prong of the UCL prohibits "anything that can properly be called a business practice and that at the same time is forbidden by law." *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163 (1999) (internal quotation marks omitted). By proscribing "any unlawful" business practice, Cal. Bus. & Prof. Code § 17200, the UCL permits injured consumers to "borrow" violations of other laws and treat them as unfair competition that is independently actionable. *Cel-Tech*, 20 Cal. 4th at 180. Here, plaintiff's claim under the unlawful prong is premised exclusively on sections 12606.2(b) and (c) of the Business and Professions Code.

---

[15] Plaintiff merely responds that the Court "need not determine which legal standard to apply" because her allegations "satisfy all of them." Opp. at 20. She cites to *Hobby*, 101 Cal. App. 3d at 368, once again, for the proposition that "the size of the packaging itself is inherently deceptive under California law." (*Id.*) However, as discussed previously, this argument fails. *See supra* at 10–11.

16

(SAC ¶ 65.)

In light of the Court's conclusion that plaintiff has established that the Alexia product's packaging contains nonfunctional slack fill, (*see supra* Section III.A.2), the Court finds that plaintiff's unlawful prong of the UCL claim, predicated on violations of section 12606.2, states a plausible claim for relief. Accordingly, defendant's motion to dismiss the same on the ground that there is no predicate violation is **DENIED**.

## IV. CONCLUSION

In light of the foregoing, defendant's motion to dismiss plaintiff's SAC is **GRANTED IN PART AND DENIED IN PART**. Specifically, the Court **ORDERS** as follows:

- Plaintiff's claims withstand defendant's motion to dismiss to the extent they are based on plaintiff's nonfunctional slack fill theory of liability, namely plaintiff's CLRA and UCL (unlawful and unfair prongs) claims. Accordingly, defendant's motion as to these claims is **DENIED**.
- However, to extent these and other claims are based on plaintiff's consumer deception theory of liability, they do not survive the motion, namely plaintiff's CLRA, UCL (unfair and fraudulent prongs), and FAL claims. Accordingly, these claims are **DISMISSED WITH PREJUDICE**.

Defendant shall file an answer within **fourteen (14) days** of this Order.

This Order terminates Docket Number 39.

**IT IS SO ORDERED.**

Dated: April 12, 2019

                                          **YVONNE GONZALEZ ROGERS**
                                  **UNITED STATES DISTRICT COURT JUDGE**